**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC, ) | |
| ) | |
| Plaintiff, ) | Civil Case No. 2:22-cv-00784-GAM |
| ) | |
| v. ) | |
| ) | |
| JOHN DOE subscriber assigned IP address ) | |
| 68.82.243.29, ) | |
| ) | |
| Defendant. ) | |

---

**PLAINTIFF'S SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION**
**TO DOE'S MOTION TO QUASH SUBPOENA OR**
**IN THE ALTERNATIVE FOR A PROTECTIVE ORDER**

---

Of Counsel and on the brief:
John C. Atkin, Esq.

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................... 1

LEGAL ARGUMENT................................................................. 1

   I.  DOE'S DENIAL OF LIABILITY REMAINS IRRELEVANT ........................................ 1

   II.  DOE'S OFFER TO PREMATURELY WAIVE SERVICE IS IRRELEVANT............... 2

   III. THE DECISIONS CITED BY DOE HAVE BEEN REVERSED, REJECTED, AND ARE PROCEDURALLY DISTINGUISHABLE............................................. 10

   IV. PLAINTIFF IS NOT A COPYRIGHT TROLL .................................. 13

CONCLUSION......................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**

*Andersen v. Atl. Recording Corp.*,
   No. 07-934, 2009 WL 3806449 (D. Or. Nov. 12, 2009)........................................................ 15

*Bearden v. Ballad Health*,
   967 F.3d 513 (6th Cir. 2020)....................................................................................................... 17

*Christianson v. Colt Indus. Operating Corp.*,
   486 U.S. 800 (1988)....................................................................................................................... 12

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013)........................................................................................................................ 8

*Cobbler Nevada LLC v. Gonzalez*,
   901 F.3d 1142 (9th Cir. 2018).................................................................................................... 5

*Criminal Prods., Inc. v. Brinkley*,
   No. 17-550, D.E. 108 (D. Utah June 30, 2020)........................................................................ 7

*D.R. by M.R. v. E. Brunswick Bd. of Ed.*,
   109 F.3d 896 (3d Cir. 1997).................................................................................................... 16

*Doe v. Megless*,
   654 F.3d 404 (3d Cir. 2011)....................................................................................................... 4

*Doe v. Porter*,
   370 F.3d 558 (6th Cir. 2004)...................................................................................................... 4

*Does I thru XXIII v. Advanced Textile Corp.*,
   214 F.3d 1058 (9th Cir. 2000).................................................................................................... 4

*Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*,
   No. 17-42, 2019 WL 4647305 (S.D. Ohio Sept. 24, 2019)................................................... 16

*Garvin v. City of Philadelphia*,
   354 F.3d 215 (3d Cir. 2003)....................................................................................................... 5

*Glacier Films (USA), Inc. v. Turchin*,
   896 F.3d 1033 (9th Cir. 2018)........................................................................................... 14, 18

*Hollingsworth v. Perry*,
   570 U.S. 693 (2013)........................................................................................................................ 8

*In re Anthanassious*,
   418 Fed. Appx. 91 (3d Cir. 2011) .............................................................................................. 12

*In re Pharmacy Benefit Managers*,
   582 F.3d 432 (3d Cir. 2009)...................................................................................................... 12

*ISC Holding AG v. Nobel Biocare Fin. AG*,
   688 F.3d 98 (2d Cir. 2012)........................................................................................................... 6

*Killer Joe Nevada, LLC v. Leaverton*,
   No. 13-4036, 2014 WL 3547766 (N.D. Iowa July 17, 2014) .............................................. 7

*Kirtsaeng v. John Wiley & Sons, Inc.*,
   136 S. Ct. 1979 (2016)................................................................................................................. 7

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*,
   998 F.2d 157 (3d Cir. 1993)...................................................................................................... 10

*Lewis v. Continental Bank Corp.*,
   494 U.S. 472 (1990)........................................................................................................................ 7

*Lincoln Prop. Co. v. Roche*,
  546 U.S. 81 (2005) ................................................................................. 5
*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ............................................................................... 8
*Malibu Media, LLC v. Doe*,
  238 F. Supp. 3d 638 (M.D. Pa. 2017) ................................................. 17
*Malibu Media, LLC v. Doe*,
  No. 13-3648, 2014 WL 2581168 (N.D. Ill. June 9, 2014) .................... 15
*Malibu Media, LLC v. Doe*,
  No. 14-493, 2015 WL 268995 (S.D. Ohio Jan. 21, 2015) ........... 2, 4, 5, 10
*Malibu Media, LLC v. Doe*,
  No. 15-4381, 2015 WL 4923114 (S.D.N.Y. Aug. 18, 2015) ................ 16
*Malibu Media, LLC v. Doe*,
  No. 18-5792, 2019 WL 7876473 (N.D. Ill. Jan. 2, 2019) ...................... 9
*Malibu Media, LLC v. Flanagan*,
  No. 13-5890, 2014 WL 2957701 (E.D. Pa. July 1, 2014) ...................... 5
*Malibu Media, LLC v. John Does 1, 6, 13, 14*,
  950 F. Supp. 2d 779 (E.D. Pa. 2013) ................................................. 15
*Malibu Media, LLC v. John Does 1-15*,
  No. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) .................. 13
*Malibu Media, LLC v. John Does 1-16*,
  902 F. Supp. 2d 690 (E.D. Pa. 2012) ............................................ 14, 15
*Malibu Media, LLC v. Rahusen*,
  No. 14-6976, 2015 WL 2231853 (D.N.J. May 11, 2015) ...................... 5
*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007) ............................................................................... 7
*Murphy Bros. v. Michetti Pipe Stringing, Inc.*,
  526 U.S. 344 (1999) ............................................................................... 5
*Patrick Collins, Inc. v. Does*,
  No. 12-574, 2012 WL 12903097 (M.D. Fla. Dec. 6, 2012) .................. 17
*Patrick Collins, Inc. v. John Does 1-9*,
  No. 12-3161, 2012 WL 4321718 (C.D. Ill. Sept. 18, 2012) .................. 16
*Riviera Distributors, Inc. v. Jones*,
  517 F.3d 926 (7th Cir. 2008) ................................................................. 7
*Sealed Plaintiff v. Sealed Defendant*,
  537 F.3d 185 (2d Cir. 2008) ................................................................. 4
*Sony Music Entm't Inc. v. Does 1–40*,
  326 F.Supp.2d 556 (S.D.N.Y.2004) ...................................................... 3
*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ................................................................................. 7
*Strike 3 Holdings LLC v. Doe*,
  849 Fed. Appx. 183 (9th Cir. 2021) ...................................................... 9
*Strike 3 Holdings, LLC v. Doe*,
  331 F.R.D. 14 (E.D.N.Y. 2019) ...................................................... 10, 11
*Strike 3 Holdings, LLC v. Doe*,
  337 F. Supp. 3d 246 (W.D.N.Y. 2018) .............................................. 3, 17

*Strike 3 Holdings, LLC v. Doe*,
  351 F. Supp. 3d 160 (D.D.C. 2018) ..................................................... 10

*Strike 3 Holdings, LLC v. Doe*,
  370 F. Supp. 3d 478 (E.D. Pa. 2019) ........................................ 11, 14, 17

*Strike 3 Holdings, LLC v. Doe*,
  964 F.3d 1203 (D.C. Cir. 2020) ........................................... 10, 11, 16

*Strike 3 Holdings, LLC v. Doe*,
  No. 17-1680, 2017 WL 5001474 (D. Conn. Nov. 1, 2017) ................... 12

*Strike 3 Holdings, LLC v. Doe*,
  No. 17-1731, 2020 WL 531996 (W.D. Wash. Feb. 3, 2020) ................ 6, 8

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-04993, 2019 WL 468816 (N.D. Cal. Feb. 6, 2019) ..................... 3

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-10619, D.E. 42 (D.N.J. July 1, 2019) ...................................... 14

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585, 2019 WL 5446239 (D.N.J. Oct. 24, 2019) ................ 12, 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020) ........... 1, 12, 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12609, D.E. 16 (D.N.J. June 27, 2019) ................................ 14, 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-1490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) ......... 6, 16, 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-16593, 2019 WL 4745360 (D.N.J. Sept. 30, 2019) ......... 13, 14, 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-1762, D.E. 12 (E.D. Pa. Oct. 2, 2018) ....................... 13, 14, 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-2019, 2018 WL 10604533 (N.D. Cal. Sept. 14, 2018) ............... 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) ................... 3, 6

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-2648, 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019) ......................... 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-3763, D.E. 12 (E.D.N.Y. Nov. 14, 2018) ................................ 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 18-4111, D.E. 8 (E.D. Pa. Dec. 17, 2018) ................................... 13

*Strike 3 Holdings, LLC v. Doe*,
  No. 19-10252, 2020 WL 5525549 (D.N.J. Sept. 14, 2020) ................... 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 19-1152, 2019 WL 3859514 (D. Conn. Aug. 16, 2019) ................. 17

*Strike 3 Holdings, LLC v. Doe*,
  No. 19-167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) ..................... 3

*Strike 3 Holdings, LLC v. Doe*,
  No. 19-2473, D.E. 8 (E.D. Pa. Aug. 20, 2019) ................................... 13

*Strike 3 Holdings, LLC v. Doe*,
  No. 19-2552, 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) ..................... 3

*Strike 3 Holdings, LLC v. Doe*,
 No. 19-5818, 2019 WL 5459693 (S.D.N.Y. Oct. 9, 2019) ........................................ 5, 12, 16, 17
*Strike 3 Holdings, LLC v. Doe*,
 No. 19-5866, 2019 WL 4493342 (S.D.N.Y. Aug. 21, 2019) ................................................ 12
*Strike 3 Holdings, LLC v. Doe*,
 No. 19-723, 2019 WL 2996428 (N.D. Cal. July 9, 2019)...................................................... 11
*Strike 3 Holdings, LLC v. Doe*,
 No. 20-1080, 2021 WL 2915082 (W.D.N.Y. June 3, 2021) .................................................... 3
*Strike 3 Holdings, LLC v. Doe*,
 No. 20-14321, 2021 WL 7286225 (D.N.J. Dec. 22, 2021) .................................................... 10
*Strike 3 Holdings, LLC v. Doe*,
 No. 20-4483, D.E. 9 (E.D.N.Y. Jan. 21, 2022) ...................................................................... 12
*Strike 3 Holdings, LLC v. Doe*,
 No. 20-4501, 2021 WL 535218 (E.D.N.Y. Feb. 12, 2021).................................................... 12
*Strike 3 Holdings, LLC v. Doe*,
 No. 21-1661 (E.D.N.Y. Jan 19, 2022) ...................................................................................... 8
*Strike 3 Holdings, LLC v. Doe*,
 No. 21-187, D.E. 7 at *1 n.1 (E.D. Pa. Mar. 16, 2021) ............................................................ 1
*Strike 3 Holdings, LLC v. Vokoun*,
 No. 20-14321, 2022 WL 310201 (D.N.J. Feb. 2, 2022) ........................................................ 10
*U.S. v. Martin*,
 454 F. Supp. 2d 278, 281 (E.D. Pa. 2006) ................................................................................ 1
*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
 860 F.2d 1 (1st Cir. 1988) ...................................................................................................... 18
*Vient v. APG Media*,
 No. 18-3862, 2019 WL 2250576 (D. Md. May 24, 2019) ...................................................... 16
*Virgin Records Am., Inc. v. Thompson*,
 512 F.3d 724 (5th Cir. 2008) .................................................................................................... 7
*Voltage Pictures, LLC v. Does 1-5,000*,
 818 F. Supp. 2d 28 (D.D.C. 2011) ............................................................................................ 3

**Statutes**
17 U.S.C. § 505 .............................................................................................................................. 7
28 U.S.C. § 1746 ............................................................................................................................ 1

**Other Authorities**
Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 Iowa L. Rev. 1105 (2015) ............ 15
Shyamkrishna Balganesh & Jonah B. Gelbach, *Debunking the Myth of the Copyright Troll
 Apocalypse*, 101 Iowa L.Rev. Bull. 43 (2015–2016)............................................................ 15

**Rules**
Fed. R. Civ. P. 1 ....................................................................................................................... 9, 16
Fed. R. Civ. P. 4 ......................................................................................................................... 2, 5
Fed. R. Ci.v P. 10 ............................................................................................................................ 4
Fed. R. Civ. P. 26 ........................................................................................................................... 9
Fed. R. Civ. P. 45 ...................................................................................................................... 1, 2
Fed. R. Civ. P. 54 ......................................................................................................................... 12

## PRELIMINARY STATEMENT

Plaintiff Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3"), by and through its attorneys, The Atkin Firm, LLC, respectfully submits this Sur-Reply Memorandum of Law in Opposition to John Doe Subscriber Assigned IP Address 68.82.243.29's ("Doe") Motion to Quash Subpoena or in the Alternative for a Protective Order ("Motion") [D.E. 6].[1]

## LEGAL ARGUMENT

### I.   DOE'S DENIAL OF LIABILITY REMAINS IRRELEVANT

Doe's reply brief contains only a single argument that is appropriately raised on reply, *see U.S. v. Martin*, 454 F. Supp. 2d 278, 281 n.3 (E.D. Pa. 2006), that Doe's revised affidavit [D.E. 9] somehow now provides a valid basis to quash the subpoena.  This is incorrect.  Even accepting— without conceding—that Doe's revised affidavit now complies with 28 U.S.C. § 1746,[2] that does nothing to change the fact that Doe's denials of liability are *irrelevant*.  At this juncture, the Court is required "to accept Plaintiff's choice in identifying particular defendants, even if the chosen defendant is presently identified as a John Doe, and assume the facts alleged against that defendant accurately capture that defendant's actions." *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, *6 (D.N.J. June 30, 2020); *see Strike 3 Holdings, LLC v. Doe*, No. 21-187, D.E. 7 at *1 n.1 (E.D. Pa. Mar. 16, 2021).  In short, Doe's denial of liability—as a matter of law—cannot satisfy his burden under Fed. R. Civ. P. 45.

---

[1] *See* Guidelines for Counsel, Motion Practice p. 3 ("Supplemental briefs, reply briefs, and sur-reply briefs may be filed without seeking leave, but once an initial opposition brief has been filed, the Court will begin considering the merits of the issue.").

[2] Plaintiff's objection to the form of the affidavit was not based merely on Doe's failure to draft it to cite the correct statute or include the correct language.  The fact remains that merely attaching an "/s/" purportedly relating to an unidentified person cannot possibly satisfy 28 U.S.C. § 1746 requirements.

## II.        DOE'S OFFER TO PREMATURELY WAIVE SERVICE IS IRRELEVANT

In a bizarre turn of events, on reply Doe raises the new argument that the subpoena is somehow unnecessary because Doe is (now) willing to waive service and make himself anonymously a party to the litigation.  Aside from being improperly raised for the first time on reply, and clearly not being a basis to quash found in Rule 45(d), this argument must fail for (at least) five additional reasons.

First, had Plaintiff sought such a waiver, it is far from clear that Doe even *could* execute a valid waiver in this matter without revealing his identity. A notice of waiver "must . . . be addressed . . . to the individual defendant[.]" Fed. R. Civ. P. 4(d)(1)(A)(i). The approved waiver form provides a blank line to be completed with the "Printed name of party waiving service of summons."[3]  In fact, one court has denied a motion to quash an ISP subpoena in a BitTorrent case—based on identical arguments—observing that the plaintiff would "be unable to . . . file a valid waiver if it does not know Defendant's name." *Malibu Media, LLC v. Doe*, No. 14-493, 2015 WL 268995, at *3 (S.D. Ohio Jan. 21, 2015).

Second, Doe's argument ignores that effecting service of process is not the only reason for which Plaintiff needs the subscriber's identity.  Plaintiff must learn the subscriber's identity to confirm that it should proceed with its claim and, if so, to properly amend its pleadings.  At this juncture, Plaintiff's claim is based on the well-recognized, reasonable inference that—before early discovery reveals the subscriber's identity—it is plausible to allege that the subscriber of an IP address is the person using that IP address to infringe.  "[W]hile the subscriber is not necessarily the infringer, the only party that Plaintiff knows of with continuous access to the IP address is the subscriber defendant.  Thus, Plaintiff needs the subscriber information to conduct a good faith

---

[3] *See* https://www.uscourts.gov/sites/default/files/ao399.pdf.

investigation." *Strike 3 Holdings, LLC v. Doe*, No. 19-167, 2019 WL 1865919, at *2 (N.D. Cal.

Apr. 25, 2019).[4]   As another court has recognized when denying a motion to quash based on an

identical arguments:

> Plaintiff contends that it seeks to obtain Defendant's identity and address not only
> so that it can properly serve Defendant, but also to confirm it should proceed with
> its claim, properly amend its pleadings, and conduct an appropriate investigation of
> its claims. While counsel's willingness to accept service on Defendant's behalf may
> obviate the need for the subpoena in part, the Court finds credible Plaintiff's other
> justifications for seeking the subpoena to advance its claims in this litigation.
> Certainly, the Court is sympathetic to Defendant's concerns about wanting to
> defend the claims asserted against him while protecting his anonymity from the
> public, but those concerns do not warrant withholding that information from
> Plaintiff or the Court and are otherwise adequately addressed via the protective
> order entered in this case.

*Strike 3 Holdings, LLC v. Doe*, No. 20-1080, 2021 WL 2915082, at *2 (W.D.N.Y. June 3, 2021)

(record citation omitted); *Strike 3 Holdings, LLC v. Doe*, 337 F. Supp. 3d 246, 257–58 (W.D.N.Y.

2018) (same).

Third, it is plainly inappropriate for Doe to seek to litigate this matter with absolute

anonymity (from both Plaintiff and the Court).   "[W]ithout the identifying information sought by

plaintiff[] in the . . . subpoena, it would be difficult to assess properly the existence of personal

jurisdiction over the Doe defendants."   *Sony Music Entm't Inc. v. Does 1–40*, 326 F.Supp.2d 556,

567 (S.D.N.Y.2004); *see also Voltage Pictures, LLC v. Does 1-5,000*, 818 F. Supp. 2d 28, 45

(D.D.C. 2011); *see also* Fed. R. Civ. P. 4(d)(5) (waiver of service does not waive objection to

personal jurisdiction).   And "[e]ven if this Court would have jurisdiction over Defendant, it is not

---

[4] *See also, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-2552, 2019 WL 4855039, at *2 (S.D.N.Y.
Oct. 2, 2019) (denying motion to quash and noting that identifying the subscriber is a "necessary
step" to determining if the subscriber is the proper defendant); *Strike 3 Holdings, LLC v. Doe*, No.
18-2637, 2019 WL 935390, at *5 (E.D. Cal. Feb. 26, 2019) ("The whole purpose of the targeted
discovery here is to allow plaintiff to determine whether it can obtain the identity of the proper
defendant."); *Strike 3 Holdings, LLC v. Doe*, No. 18-04993, 2019 WL 468816, at *2 (N.D. Cal.
Feb. 6, 2019).

proper for Defendant to proceed completely anonymously to Plaintiff and its counsel, as opposed to permitting Defendant to proceed under a pseudonym or fictitious name on the public docket." *Malibu Media*, 2015 WL 268995 at *4.

Although Rule 10(a) generally requires that "[t]he title of the complaint must name all the parties," the Third Circuit has instructed that when considering whether to permit a party to litigate under a pseudonym in civil litigation, this Court must weigh the party's interest in anonymity and balance it against both the public interest in disclosure and any prejudice to their adversary. *See Doe v. Megless*, 654 F.3d 404, 408– 409 (3d Cir. 2011); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) (considering "whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court.") (citing *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000)).

Here, Plaintiff would clearly be prejudiced by allowing Doe to remain absolutely anonymous, as opposed to merely being allowed to litigate under a pseudonym on the public docket. "At a bare minimum, counsel must have full access to the opposing party's information and identity. Here, Plaintiff and its counsel would lack even the most basic knowledge—the identity of its party opponent. That is clearly insufficient information." *Malibu Media*, 2015 WL 268995 at *5 (citing *Doe v. Porter*, 370 F.3d 558, 561 (6th Cir. 2004)). And that prejudice to Plaintiff is most acute at this stage of the litigation, since Plaintiff is seeking Doe's identity not only to serve process, but to make the threshold decision of whether it even wishes to proceed with its claims at all, and there is simply no substitute that can be offered for this knowledge.

4

Indeed, contrary to Doe's unsupported arguments that Plaintiff's need to confirm Doe's role in the infringement is "circular" or "defies logic," as Plaintiff has already explained, D.E. 3-1 at 5, 11–15; D.E. 7 at 5–7, Plaintiff must not only satisfy itself that Doe is the infringer, but it must amend its pleadings to allege the evidence necessary to further identify him as the infringer, beyond his mere status as the subscriber. *See, e.g.*, *Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142, 1145–47 (9th Cir. 2018); *Malibu Media, LLC v. Rahusen*, No. 14-6976, 2015 WL 2231853, at *3–4 (D.N.J. May 11, 2015); *Malibu Media, LLC v. Flanagan*, No. 13-5890, 2014 WL 2957701, at *1–2 (E.D. Pa. July 1, 2014). And, of course, under Third Circuit precedent Plaintiff must also amend its pleading to replace the Doe party (which Plaintiff will seek to do under seal, subject to a protective order). "Replacing the name John Doe with a party's real name amounts to the changing of a party or the naming of a party[.]" *Garvin v. City of Philadelphia*, 354 F.3d 215, 220 (3d Cir. 2003). "This means that Plaintiff must amend its complaint *after* learning Defendant's name." *Malibu Media*, 2015 WL 268995 at *3 (emphasis added).

Fourth, Doe's argument ignores that Plaintiff—not Doe—is the party that possesses the discretion to seek a waiver of service or not. Fed. R. Civ. P. 4(d) ("*The plaintiff* may notify such a defendant that an action has been commenced and request that the defendant waive service of a summons.") (emphasis added). Nothing *requires* Plaintiff to seek waiver of service. Indeed, the authority to determine which parties to serve with process (or request a waiver of service from)—to make a party to this litigation, *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999)—is a natural consequence of the fact that "Strike 3, as the master of its complaint, is free to decide which wrongdoers to sue." *Strike 3 Holdings, LLC v. Doe*, No. 19-5818, 2019 WL 5459693, at *2 (S.D.N.Y. Oct. 9, 2019) (citing *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005)); *Strike 3 Holdings, LLC v. Doe*, No. 18-1490, 2019 WL 1529339, at *4 (W.D.N.Y. Apr.

8, 2019) ("Plaintiff has an absolute right at that stage of the litigation [where the ISP identifies the subscriber] to determine whether or not to proceed with its lawsuit.") (citing *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 111 (2d Cir. 2012)).  Doe cannot unilaterally decide to make himself a party by waiving service before Plaintiff learns his identity.

Finally, the Court need look no further than the decision of *Strike 3 Holdings, LLC v. Doe*, No. 17-1731, 2020 WL 531996 (W.D. Wash. Feb. 3, 2020) (Zilly, J.) ("Washington Case"), *aff'd on other grounds*, 849 Fed. Appx. 183 (9th Cir. 2021), cited by Doe to cherry-pick the Court's negative (and, respectfully, incorrect) characterizations of Plaintiff, to see exactly why Doe's attempt to litigate with complete anonymity is improper and should be denied.

In the Washington Case, the District Court granted expedited discovery to identify the subscriber, No. 17-1731, D.E. 5, but shortly thereafter, the matter was transferred to a new judge who prevented Plaintiff from learning the subscriber's identity, forcing on Plaintiff the Hobson's choice between (1) abandoning the Copyright protections afforded its works by Congress, or (2) serving process (through the Court) *without* confirming Plaintiff could identify the infringer.  No. 17-1731, D.E. 7, 8.  *Cf. Strike 3*, 2019 WL 935390 at *5 ("The whole purpose of the targeted discovery here is to allow plaintiff to determine whether it can obtain the identity of the proper defendant.").

Once served, the defendant retained counsel, who refused to provide his client's identity despite the entry of a consent protective order, opting instead to assert counterclaims and engage in a slew of wasteful motion practice.  It was not until several months into the litigation that the defendant finally disclosed his identity to Plaintiff, which is not part of the public record pursuant to the consent protective order entered in the Washington Case.

When Plaintiff finally learned the defendant's identity, it investigated that information and

discovered that the defendant resided with his adult son, and that the defendant and his son had

*identical* names, lived at the *same* address, and used the *same* IP address and the *same* BitTorrent

program. *See* No. 17-1731, D.E. 179 at ¶¶ 9–14; D.E. 180 at Ex. C. Since Plaintiff only proceeds

with infringement claims where it is confident it can identify the true infringer, *see* D.E. 3-2 at ¶

36, Plaintiff promptly dismissed its claim against the defendant. No. 17-1731, D.E. 53.

Nevertheless, the District Court permitted the defendant's stand-alone counterclaim for a

declaration of non-infringement to proceed, and during discovery of that counterclaim (and others

on which Plaintiff ultimately prevailed), the defendant's son admitted to downloading adult works

with BitTorrent using the defendant's IP address but could not remember "offhand"—years later—

whether they were Plaintiff's works. No. 17-1731, D.E. 180 at Ex. A (T78:2 to 79:5).

The issue of a fee award prevented the parties from resolving the matter,[5] causing litigation

to stretch on even after the defendant's son admissions came to light.  Ultimately, the District Court

---

[5] Plaintiff disputed whether the defendant had standing to seek declaratory relief (and therefore
become a "prevailing party" under 17 U.S.C. § 505) based on the defendant's (1) apprehension of
a future lawsuit, which (since he claimed no rights in Plaintiff's works) could not "put[] [him] to
the choice between abandoning his rights or risking prosecution," *MedImmune, Inc. v. Genentech,
Inc.*, 549 U.S. 118, 129 (2007), or (2) interest in obtaining a fee award.  *See Steel Co. v. Citizens
for a Better Environment*, 523 U.S. 83, 107 (1998); *Lewis v. Continental Bank Corp.*, 494 U.S.
472, 480 (1990).  Plaintiff also disputed whether a fee award was appropriate because (1) the
defendant's counterclaim did not promote the purposes of the Copyright Act, *Kirtsaeng v. John
Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016) (observing the Copyright Act seeks to "strik[e]
a balance between two subsidiary aims: encouraging and rewarding authors' creations while also
enabling others to build on that work" and that "fee awards under § 505 should encourage the types
of lawsuits that promote those purposes"), and (2) the defendant stonewalled discovery to hide his
son's infringement. *See id.* at 1988 ("No matter which side wins a case, the court must assess
whether the other side's position was (un)reasonable."); *Virgin Records Am., Inc. v. Thompson*,
512 F.3d 724, 725–27 (5th Cir. 2008) (affirming denial of fee award to defendant/subscriber who
delayed resolution by not disclosing his daughter was the infringer); *see also Riviera Distributors,
Inc. v. Jones*, 517 F.3d 926, 929 (7th Cir. 2008); *Criminal Prods., Inc. v. Brinkley*, No. 17-550,
D.E. 108 at *4–5 (D. Utah June 30, 2020); *Killer Joe Nevada, LLC v. Leaverton*, No. 13-4036,
2014 WL 3547766, at *7 (N.D. Iowa July 17, 2014), *aff'd sub nom.*, 807 F.3d 908 (8th Cir. 2015).

rejected Plaintiff's arguments regarding standing, granted partial summary judgment to the defendant on his counterclaim for a declaration of non-infringement, and awarded the defendant fees and costs.  Plaintiff did not appeal the District Court's partial grant of summary judgment declaring the defendant's non-infringement because, although based on an evidentiary mistake,[6] the District Court's ultimate conclusion regarding the defendant's culpability was likely correct: the infringer was not the defendant, but the defendant's son, who admitted to using the defendant's IP address to download and distribute adult works.  Instead, Plaintiff appealed only the District Court's (1) holding that the defendant had standing to pursue his counterclaim for a declaratory judgment in the absence of an injury, and (2) award of attorneys' fees and costs. *See supra* n.5. In a *per curiam* opinion, the Ninth Circuit panel held that "the pending litigation" between the parties (concerning *direct* infringement), and a perceived threat of future *contributory* infringement claims (based on statements made *after* Plaintiff dismissed its claim and learned of the son's infringement), retroactively gave the defendant standing for his counterclaim,[7] and affirmed the District Court's fee award, while "admit[ting] that the district court's analysis of the *Fogerty*

---

[6] The Washington Court incorrectly found that Plaintiff's pre-suit evidence only shows that the defendant possessed ".torrent" files, but not pieces of the infringing works, because in that matter Plaintiff had identified the infringing files by the "Info Hash" values used to obtain their pieces, rather than their "File Hash" values. *Strike 3*, 2020 WL 531996 at *5.  Importantly, that matter did not involve VXN Scan and Plaintiff has revised its filings to resolve the ambiguity that led to that error. *See Strike 3 Holdings, LLC v. Doe*, No. 21-1661 (E.D.N.Y. Jan 19, 2022) (Brown, J.) (discharging Order to Show Cause and allowing matter to proceed after questioning whether to dismiss claim based on the Washington Case).

[7] *But see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) ("[A] threatened injury must be certainly impending to constitute injury in fact, . . .  [a]llegations of possible future injury are not sufficient.");  *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("Article III demands that an 'actual controversy' persist throughout all stages of litigation."); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571 n.4 (1992) ("It cannot be that, by later participating in the suit, [a party] retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset.").

factors could have been more robust[.]" *Strike 3 Holdings LLC v. Doe*, 849 Fed. Appx. 183, 185–86 (9th Cir. 2021).

As this Court recognized when granting early discovery in this matter, there is, of course, a possibility that the subscriber will prove to not be the infringer.  As was the case in the Washington Case, it is entirely possible that other members of Doe's family reside in the household, have access to the IP address, and are the infringers—a fact Doe pointedly avoids discussing even in his revised affidavit. However, as the voluminous procedural history of the Washington Case clearly demonstrates, Doe's approach would only cause both parties to incur significant fees and judicial resources, in violation of Fed. R. Civ. P. 1, which may be entirely avoided by merely allowing the ISP to respond to the subpoena so that Plaintiff can determine whether to proceed with its claim.  *See Malibu Media, LLC v. Doe*, No. 18-5792, 2019 WL 7876473, at *3 (N.D. Ill. Jan. 2, 2019) ("A better course to chart is to grant leave to [Plaintiff] to conduct limited discovery and then determine whether the subscriber is the infringer. In other words, this investigation should come after pleading, not before it. . . . [since] identifying the subscriber will either lead to identifying the infringer or it will not.").  Indeed, as Doe himself admits, adopting his position would only needlessly *delay* Plaintiff's learning his identity, since Doe must still be identified in his initial disclosures, Fed. R. Civ. P. 26(a)(1)(A)(i), and Plaintiff would be "perfectly free to serve such discovery as it deems appropriate."  D.E. 10 at 3-4.  Why achieving that pointless delay should make any "significant"—or legitimate—difference to Doe is left entirely unexplained.  D.E. 10 at 2.

To be clear, Plaintiff has no objection to Doe proceeding under a pseudonym (and will join in a later motion that actually addresses the necessary factors required to afford this relief).[8]  But Plaintiff does not—and cannot—agree to proceed against a truly anonymous party.   That would only entail further delay and drain party and judicial resources beyond Doe's wasteful Motion, requiring the parties to draft pleadings and discovery plans, attend pre-trial conferences, and conduct "normal" discovery, all before Plaintiff can even confirm whether it wants to proceed with its claim against Doe (or a third party).   Doe's position is directly contrary to Rule 1, which instructs that the rules of civil procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."   In short, "[t]he appearance of Defendant's counsel and his purported authority to accept service on behalf of his anonymous client does not moot the subpoena or provide grounds to quash it."  *Malibu Media*, 2015 WL 268995 at *5–6 (footnote omitted).

## III.   THE DECISIONS CITED BY DOE HAVE BEEN REVERSED, REJECTED, AND ARE PROCEDURALLY DISTINGUISHABLE

In yet another new argument raised for the first time on reply, Doe provides large block quotes from two decisions in the hopes that the Court will blindly accept their conclusions without any further analysis.  *Strike 3 Holdings, LLC v. Doe*, 331 F.R.D. 14 (E.D.N.Y. 2019) (Orenstein, J.); *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018) (Lamberth, J.), *rev'd*, 964 F.3d 1203 (D.C. Cir. 2020).

---

[8] Doe is mistaken that the parties consent alone is sufficient for the Court to grant this relief, since litigating under a pseudonym necessarily infringes on the public's First Amendment right of access to the courts.  *See generally Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993); *Strike 3 Holdings, LLC v. Doe*, No. 20-14321, 2021 WL 7286225 (D.N.J. Dec. 22, 2021) (denying Plaintiff's motion to seal judicial records identify defendant based on Plaintiff's interest alone, without prejudice, and leaving open possibility Defendant could make sufficient showing on renewed motion), *default judgment granted sub nom.*, *Strike 3 Holdings, LLC v. Vokoun*, No. 20-14321, 2022 WL 310201 (D.N.J. Feb. 2, 2022).

First, while Doe declines to cite to the Court of Appeals decision reversing the D.C. District Court decision he relies upon, it is hard to understand how Doe can argue with a straight face that the D.C. Court of Appeals reversal of it "does not negate the validity of Judge Lamberth's observation on the Plaintiff's litigation strategy." D.E. 10 at 6.  The D.C. Circuit reversed the D.C. District Court's decision, which it found to be an "abuse of discretion under any applicable standard," *Strike 3*, 964 F.3d at 1207 n.2, because the District Court erred by, among other things, "drawing unsupported, negative inferences against Strike 3 regarding its litigation tactics" because "[t]he facts before the district court did not support these conclusions."   *Id.* at 1205, 1213.  It is difficult to see how the D.C. District Court decision that Doe relies upon could have been negated any further by the Court of Appeals.  Moreover, even before the D.C. District Court decision was reversed on appeal, numerous courts saw it for the error that it was.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481 (E.D. Pa. 2019) (declining to adopt D.C. District Court's reasoning, noting that "other district courts, both within and outside this district, have similarly rejected that decision" because "Strike 3 has pleaded a plausible claim for copyright infringement" and "[t]here is nothing before us at this time to suggest that Strike 3 is doing anything other than taking the proper steps to enforce what it deems to be valid copyrights"); *Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428, at *2–3 (N.D. Cal. July 9, 2019) (rejecting D.C. District Court's opinion as "heavily criticized and rarely followed").

Second, Doe's reliance on Magistrate Judge Orenstein's decision in the Eastern District of New York is undermined by that decision *itself*.  In that case, the court sought to distinguish controlling Second Circuit precedent by holding that a motion for expedited discovery is in a "fundamentally" different "procedural posture" from a motion to quash, because "[t]he two inquiries are qualitatively different," to justify denying expedited discovery.  *Strike 3*, 331 F.R.D.

at 17. Whatever the merits of this distinction are in the context of motions for expedited discovery,[9]
the fact is that in this matter, the Court has *already* found Plaintiff has shown good cause to conduct
limited early discovery in this matter.[10]   D.E. 4; *see also Strike 3 Holdings, LLC v. Doe*, No. 17-
1680, 2017 WL 5001474, at *7 n.10 (D. Conn. Nov. 1, 2017) (reminding defendant that "[i]n
considering whether to make a motion to quash the subpoena . . . the Court has already analyzed
the requisite principal factors to determine that such a subpoena should be allowed[.]").   This
decision has no relevance to the question before this Court:  whether Doe has met his burden under
Rule 45 to quash the subpoena that has *already* been authorized by the Court. Moreover,
Magistrate Judge Orenstein's speculative and unsupported concerns that Plaintiff *might* not
comply with protective orders simply cannot be squared with the fact that Plaintiff has
demonstrated it voluntarily seeks—and complies with—protective orders in these matters  *See,
e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 21-4020, D.E. 6, 7, 17, and 19 (E.D. Pa.) (McHugh, J.);
*Strike 3 Holdings, LLC v. Doe*, No. 20-5128, D.E. 6, 7, 11, and 13 (E.D. Pa.) (McHugh, J.).

---

[9] To be clear, with only one exception, every court to consider it has rejected it as a basis to deny
expedited discovery in these matters.  *Strike 3 Holdings, LLC v. Doe*, No. 20-4483, D.E. 9
(E.D.N.Y. Jan. 21, 2022); *Strike 3 Holdings, LLC v. Doe*, No. 20-4501, 2021 WL 535218, at *4
(E.D.N.Y. Feb. 12, 2021); *Strike 3*, 2019 WL 5459693 at *3; *Strike 3 Holdings, LLC v. Doe*, No.
19-5866, 2019 WL 4493342, at *2 n.1 (S.D.N.Y. Aug. 21, 2019).  The lone decision that has
followed Magistrate Judge Orenstein's decision (to deny expedited discovery) was itself reversed
on appeal for failing to recognize that doing so was contrary to the Federal Rules of Civil Procedure
and Third Circuit precedent.  *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2019 WL 5446239
(D.N.J. Oct. 24, 2019), *rev'd*, 2020 WL 3567282 (D.N.J. June 30, 2020).

[10] Doe has not moved for reconsideration of the order permitting expedited discovery, but even if
he had, he has failed to show that that interlocutory decision should be reversed.  Fed. R. Civ. P.
54(b); *In re Anthanassious*, 418 Fed. Appx. 91, 95–96 (3d Cir. 2011); *In re Pharmacy Benefit
Managers*, 582 F.3d 432, 439 (3d Cir. 2009) ("A court has the power to revisit prior decisions of
its own or of a coordinate court in any circumstance . . . [but] as a rule courts should be loathe to
do so in the absence of extraordinary circumstances such as where the initial decision was clearly
erroneous and would make a manifest injustice.") (quoting *Christianson v. Colt Indus. Operating
Corp.*, 486 U.S. 800, 816 (1988)); *Strike 3*, 370 F. Supp. 3d at 481–83 (denying motion for
reconsideration of order permitting expedited discovery).

## IV.     PLAINTIFF IS NOT A COPYRIGHT TROLL

In yet another argument raised for the first time on reply, Doe tries a last-ditch effort to prevail by maligning Plaintiff as a "copyright troll" and leveling baseless accusations that Plaintiff's suit is "extortion masquerading as litigation," D.E. 10 at 9, merely because Plaintiff has invoked its First Amendment right to petition the courts for redress to protect its copyrights.  These "arguments" appear (at best) to be an attempt to argue that the subpoena, although directed to a third party, somehow subjects Doe to an "undue burden."  At worst, they are an unprofessional and improper attempt to inflame the passions of the Court in the hopes that it will rule on something other than the merits.  The Court should not be fooled.

First, to the extent Doe intended to shoe-horn this argument into the rubric of Rule 45—to argue that the subpoena represents some form of "undue burden"—the fact is that subscribers "lack[] standing to quash a third-party subpoena on the basis of . . . 'undue burden.'" D.E. 7-1 at 2; *see Strike 3 Holdings, LLC v. Doe*, No. 19-2473, D.E. 8 at ¶ 3 (E.D. Pa. Aug. 20, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-4111, D.E. 8 at *2-3 n.1 (E.D. Pa. Dec. 17, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-1762, D.E. 12 at *1 n. 1 (E.D. Pa. Oct. 2, 2018); *see also Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *5 (D.N.J. Sept. 30, 2019).  It is *the ISP*, not *the subscriber*, burdened by the subpoena, a fact that is "fatal" to this argument:

> Defendant is not faced with an undue burden because the subpoena is directed at the internet service provider and not the Defendant.  It is the service provider that is compelled to disclose the information, and thus, its prerogative to claim an undue burden.  In this case, there is no burden on Defendant to produce *any* information.

*Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, at *2 (E.D. Pa. July 30, 2012) (citations omitted) (emphasis in original).

"[T]he only consequence of" this subpoena is "that Plaintiff will receive information identifying the ISP subscriber[] associated with the allegedly infringing IP address[] as set forth in

Exhibit A to the Complaint[].” *Malibu Media, LLC v. John Does 1-16*, 902 F. Supp. 2d 690, 697–98 (E.D. Pa. 2012).  Indeed, even if Doe's improper *ad hominem* attacks on Plaintiff were true—which they clearly are not—that "is not the type of 'undue burden' that Rule 45 was designed to protect against."  *Strike 3*, 2019 WL 4745360 at *6; *Strike 3*, No. 18-1762, D.E. 12 at *1-2 n.1 (E.D. Pa. Oct. 2, 2018) ("Doe's unsupported assertion that Strike [3] would use Doe's personal information to coerce settlement is also insufficient to quash Strike's subpoena as an undue burden."); *see also Strike 3 Holdings, LLC v. Doe*, No. 18-12609, D.E. 16 at * 6–7 (D.N.J. June 27, 2019) ("Doe's focus on the cost of defending this entire suit is misplaced. It is the burden of this subpoena that is at issue and insofar as it merely seeks his name and address and seeks it from a third party, that burden is minimal.").  "Defendant's contentions serve as denials of liability and objections to Plaintiff's litigation strategy rather than as coherent arguments within the meaning of Rule 45.  Such denials are not amenable to adjudication on a motion to quash or without the benefit of discovery."  *Strike 3 Holdings, LLC v. Doe*, No. 18-10619, D.E. 42 at *2 (D.N.J. July 1, 2019).

To be sure, Internet piracy lawsuits are "not without controversy:  many involve 'copyright trolls' who buy up copyrights to adult films and then sue masses of unknown BitTorrent users for illegally downloading pornography.  *This one is different*[.]"  *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1035 (9th Cir. 2018) (footnote omitted) (emphasis added).  Plaintiff is not in the business of collecting other artists' copyrights and forcing innocent parties to pay nuisance settlements to avoid embarrassment.  Instead, Plaintiff is part of a creative enterprise that employs nearly 100 people to produce award-winning adult films, and that relies on its loyal fans, who lawfully acquire access to its works, for its success.  D.E. 3-2 at ¶¶ 13–25, 37, 39; *see Strike 3*, 370 F. Supp. 3d at 481–82; *Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 780–

81 (E.D. Pa. 2013).  Plaintiff's litigation is not a primary source of revenue, but a way to compensate sales lost to piracy and to redirect infringers and potential infringers to the legitimate marketplace.[11]  D.E. 3-2 at ¶ 37.

Unfortunately, as Plaintiff's creative output has grown, so too has piracy of its works, which represents a major threat to Plaintiff's business.  *Id.* at ¶¶ 26–30.  Plaintiff pursues infringers as a costly but necessary way of maintaining the viability of its business and in fairness to its loyal customers, who pay for what others are stealing on a massive scale.  *Id.* at ¶¶ 28–32, 37, 39.  In pursuing its enforcement efforts, Plaintiff is mindful of the possibility that some defendants may not want their interest in adult works revealed to the public and takes steps to remove this concern as a factor in its suits. *Id.* at ¶¶ 33–38.  Plaintiff seeks to stop the most egregious offenders engaged in large-scale unauthorized distribution of its copyrighted works, to deter and redirect infringers back to the legitimate marketplace, and to make the company whole.  *Id.* at ¶¶ 33, 37, 39.

The volume of Plaintiff's litigation is the product of two factors over which Plaintiff has no control:  (1) the vast number of infringers, *Andersen v. Atl. Recording Corp.*, No. 07-934, 2009 WL 3806449, at *7 (D. Or. Nov. 12, 2009), and (2) the fact that many parties argue mass joinder in these cases is *improper*. *See Malibu Media*, 902 F. Supp. at 699–700.  Filing a "very large number of infringement suits" is *exactly* "what the holders of intellectual property rights do when they are faced with mass infringement."  *Malibu Media, LLC v. Doe*, No. 13-3648, 2014 WL 2581168, at *2 (N.D. Ill. June 9, 2014); *Vient v. APG Media*, No. 18-3862, 2019 WL 2250576, at

---

[11] *Compare* Matthew Sag, *Copyright Trolling, An Empirical Study*, 100 IOWA L. REV. 1105, 1108 (2015) (defining a "copyright troll" loosely as a party that is "more focused on the business of litigation than on selling a product or service or licensing their [copyrights] to third parties to sell a product or service"), *with* Shyamkrishna Balganesh & Jonah B. Gelbach, *Debunking the Myth of the Copyright Troll Apocalypse*, 101 IOWA L.REV. BULL. 43, 48–49 (2015–2016) (suggesting what qualifies a party as a "copyright troll" is its conduct in litigation and not its "status" as a litigant).

*5 n.3 (D. Md. May 24, 2019). "The proliferation of these types of lawsuits would be expected given the alleged infringement by thousands of people.  The volume of lawsuits alone does not indicate any impropriety." *Patrick Collins, Inc. v. John Does 1-9*, No. 12-3161, 2012 WL 4321718, at *5 (C.D. Ill. Sept. 18, 2012). "Where, as here, a plaintiff alleges that it is the victim of copyright infringement on a massive scale, the mere fact that it has filed a significant number of lawsuits is not a valid basis on which to impute an improper purpose." *Strike 3*, 964 F.3d at 1213.

"Nor is the fact that many such lawsuits settle or are dismissed at an early stage necessarily suggestive of improper intent."  *Id.*; *Freeplay Music, LLC v. Dave Arbogast Buick-GMC, Inc.*, No. 17-42, 2019 WL 4647305, at *14 (S.D. Ohio Sept. 24, 2019).  Many of Plaintiff's lawsuits are voluntarily dismissed when expedited discovery shows that the infringer cannot be conclusively identified, or where a defendant provides exculpatory evidence or proven hardship.  D.E. 3-2 at ¶ 36; *see Strike 3*, 2019 WL 5459693 at *2 ("Strike 3, as the master of its complaint, is free to decide which wrongdoers to sue."); *Strike 3*, 2019 WL 1529339 at *4 ("Plaintiff has an absolute right at that stage of the litigation to determine whether or not to proceed with its lawsuit.").  And where the infringer *can be* identified and no extenuating circumstances are shown, there is often little— if anything—that remains in dispute.  Where the parties agree Plaintiff will likely prevail on the merits, a reasonable settlement saves litigation costs and further burdening the court.  Fed. R. Civ. P. 1; *D.R. by M.R. v. E. Brunswick Bd. of Ed.*, 109 F.3d 896, 901 (3d Cir. 1997).  The fact is "there are any number of reasons free from coercion that a defendant may choose to settle, including culpability." *Malibu Media, LLC v. Doe*, No. 15-4381, 2015 WL 4923114, at *1 n.4 (S.D.N.Y. Aug. 18, 2015).

As many courts have recognized—both in this Circuit[12] and around the country[13]—there is no evidence to support Doe's *ad hominem* attacks and, of course, Doe provides absolutely none here.  Nothing in the record before this Court supports Doe's attempts to tar Plaintiff as a bad actor. *See Strike 3*, No. 18-3763, D.E. 12 at *1 (E.D.N.Y. Nov. 14, 2018) (analogizing to other litigants' conduct is not "specific to this case [and] there is nothing in the record to suggest that improper conduct has been engaged in by this Plaintiff against this Defendant"); *Strike 3*, 337 F. Supp. 3d at 256–58 ("The record before the Court does not support Defendant's accusations."); *Malibu Media, LLC v. Doe*, 238 F. Supp. 3d 638, 645 (M.D. Pa. 2017).  Instead, the record shows that Plaintiff does not employ abusive litigation tactics, D.E. 3-2 at ¶¶ 33–38, and invites courts to implement protective orders, D.E. 3-1 at 20, to "remove[] much, if not all, of the leverage that a plaintiff would possess to unduly coerce [a defendant] into settlement." *Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987, at *4 (S.D.N.Y. Jan. 2, 2019).  Indeed, any "speculative" concerns of settlement coercion that may have been justified previously in this matter are "especially minimized" in this case, since Doe is now "represented by counsel." *Patrick Collins, Inc. v. Does*, No. 12-574, 2012 WL 12903097, at *4 (M.D. Fla. Dec. 6, 2012).

Doe's schoolyard tactic of name-calling is not a substitute for well-supported legal arguments. *Bearden v. Ballad Health*, 967 F.3d 513, 519 (6th Cir. 2020) ("Careful research and

---

[12] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-10252, 2020 WL 5525549, at *4 (D.N.J. Sept. 14, 2020); *Strike 3*, 2019 WL 5446239 at *6 (finding, after two (2) days of evidentiary hearings, no evidence that Strike 3 engages in abusive litigation practices), *rev'd on other grounds*, 2020 WL 3567282 (D.N.J. June 30, 2020); *Strike 3*, 2019 WL 4745360 at *6; *Strike 3*, No. 18-12609, D.E. 16 at *6 (D.N.J. June 27, 2019); *Strike 3*, 370 F. Supp. 3d at 481–82; *Strike 3*, No. 18-1762, D.E. 12 at *1 n.1 (E.D. Pa. Oct. 2, 2018).

[13] *See, e.g.*, *Strike 3*, 2019 WL 5459693 at *2; *Strike 3 Holdings, LLC v. Doe*, No. 19-1152, 2019 WL 3859514, at *2 (D. Conn. Aug. 16, 2019); *Strike 3*, 2019 WL 1529339 at *5; *Strike 3*, 337 F. Supp. 3d at 256–57; *Strike 3 Holdings, LLC v. Doe*, No. 18-3763, D.E. 12 at *1 (E.D.N.Y. Nov. 14, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-2019, 2018 WL 10604533, at *3–4 (N.D. Cal. Sept. 14, 2018).

cogent reasoning, not aspersions, are the proper tools of our trade.") (quoting *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 860 F.2d 1, 6 n.2 (1st Cir. 1988)). "[I]ndividual cases . . . deserve to be judged on their own merits and not saddled with a blanket indictment against peer-to-peer copyright litigation." *Glacier Films*, 896 F.3d at 1038.  This Court should reject Doe's baseless claim that Plaintiff has (or will) act improperly in protecting its copyrighted works and recognize Doe's retreat into empty vitriol for what it is:  the last resort of a (non)party with a bad argument.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Strike 3 Holdings, LLC, respectfully requests that the Court enter an Order (1) denying Doe's motion to quash and (2) denying Doe's alternative request for a protective order, without prejudice.

Dated: 3/25/2022

Respectfully submitted,
By:  /s/ John C. Atkin
John C. Atkin, Esq. (326957)
JAtkin@atkinfirm.com
55 Madison Avenue, Ste. 400
Morristown, NJ 07960
Tel.: (973) 314-8010 / Fax: (833) 693-1201
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

Pursuant to Local Civil Rule 5.1.2(8)(b), I certify that on the date set forth below, I caused a copy of the Sur-Reply Memorandum of Law in Opposition to Doe's Motion to be filed electronically and that it is available for viewing and downloading from the ECF system.

Dated: 3/25/2022

By:  /s/ John C. Atkin
John C. Atkin, Esq. (326957)